**IN THE UNITED STATES COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| **T.F. b/n/f LEAH F. & TED F.,** | § | |
| **and LEAH F. & TED F.,** *individually*, | § | |
| *Plaintiffs*, | § | **Civil Action No.** <u>7:20-cv-215</u> |
| **vs.** | § | |
| | § | |
| **GREENWOOD INDEPENDENT** | § | |
| **SCHOOL DISTRICT and EDWARD** | § | |
| **ARIEL ELLIOT,** *individually* | § | |
| *Defendant*. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

T.F., by and through his next friends and natural parents, Leah F. & Ted F. and Leah F. & Ted F, *individually* (collectively "Plaintiffs"), file this *Original Complaint* alleging that the Greenwood Independent School District ("GISD") and Edward Ariel Elliot, *individually*, violated the various rights of T.F. as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts as permitted by law. In support thereof, Plaintiffs submit the following:

**I. INTRODUCTION & BRIEF OVERVIEW OF CASE**

1.      During the 2018 – 2019 school year when T.F. was in the 8th grade, he was sexually harassed and forcefully held down and sexually assaulted at least 5 times by other male students ("the perpetrators") at GISD.

2.      During the same approximate time period, the perpetrators sexually assaulted several other male students in a similar manner.

3.      GISD failed to appropriately respond to the sexual harassment and sexual assaults. For example, GISD failed to complete a Title IX[1] investigation, failed to take appropriate action to

---

[1] 20 U.S.C. §1681 *et seq.* ("Title IX").

keep T.F. safe, failed to remediate the effects of the sexual harassment and sexual assaults on T.F., and failed to provide to T.F.'s mother - *Leah F.* - and T.F.'s father - *Ted F.* - information regarding the sexual assaults and harassment.

4.      In fact, not only did GISD fail to appropriately respond to the sexual harassment and sexual assaults, but more than once GISD employees affirmatively and specifically forbade both the victims and the perpetrators from discussing the sexual harassment and sexual assaults with anyone.

5.      Moreover, GISD retaliated against Plaintiffs for asserting their rights pursuant to Title IX by discontinuing the longstanding business relationship between GISD and Athletic Supply, Inc., a closely held corporation of which Ted F. owns a percentage.[2]

6.      These facts, combined with GISD's resistance to filing a police report, GISD's filing of an inaccurate police report that failed to provide any names or even mention the sexual nature of the incidents (referring to the incidents only as acts of hazing), and GISD's failure to report the sexual harassment and sexual assaults to the Department of Family Protective Services ("DFPS") demonstrate clearly GISD's intention and repeated attempts to conceal the sexual harassment and sexual assaults.

7.      Thereafter, due only to the diligence of T.F.'s parents in providing law enforcement and the Midland County District Attorney with pertinent facts regarding the sexual assaults, 2 of the perpetrators were criminally charged and adjudicated of criminal offences.

8.      As a result of GISD's acts and omissions, Plaintiffs suffered injuries and damages.

9.      Accordingly, Plaintiffs bring forth claims pursuant to Title IX of the Education Amendments of 1972, *et seq*., 42 U.S.C. §1983 and 1988; and the 14th Amendment.

---

[2] Athletic Supply, Inc was solely owned by Ted F.'s family until approximately March 2018 when it was sold to a private equity company; Ted F. now owns a percentage of the company.

10.      Accordingly, Plaintiffs request equitable, remedial, and compensatory damages pursuant to the civil rights acts, including—*but not limited to*—damages for past and future emotional anguish, compensatory services, loss of income, reimbursement for various out-of-pocket expenses, costs of representation including attorneys' fees and related taxable and non-taxable costs, and other forms of equitable and compensatory relief that this Court may otherwise provide. In addition, Plaintiffs seek punitive damages.

## II. <u>JURISDICTION</u>

11.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343, because the matters in controversy arise under the laws of the United States. In addition, jurisdiction is conferred upon this Court pursuant to 20 U.S.C. §1681-1688, Title IX of the Education Amendments of 1972, *et seq*., and the federal regulations issued thereunder. Further, Plaintiffs assert claims pursuant to the 14th Amendment to the Constitution of the United States, 42 U.S.C. §1983. In addition, this Court has jurisdiction to award Plaintiffs attorneys' fees and costs pursuant to 42 U.S.C. §1988 and punitive damages under §1983 and Title IX.

## III. <u>VENUE</u>

12.      Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Western District of Texas, Midland Division.

## IV. <u>PARTIES</u>

13.      T.F.  lives with his parents, Leah F. and Ted F. at 5609 East County Road 97; Midland, Texas 79706.

14.      Leah F. is an individual who lives with her husband Ted F. and her son T.F. at 5609 East County Road 97; Midland, Texas 79706.

**15.**     Ted F. is an individual who lives with his wife Leah F. and his son T.F. at 5609 East County Road 97; Midland, Texas 79706.

**16.**     The Greenwood Independent School District ("GISD") is a school district organized under the laws of the State of Texas. At all times pertinent to this case, T.F. was a student at GISD. GISD can be served through its superintendent Edward A. Elliot at 2700 FM 1379; Midland, Texas 79706. However, GISD's attorney, Dennis J. Eichelbaum, graciously agreed to accept service by email at deichelbaum@edlaw.com.

**17.**     GISD Superintendent Edward Ariel Elliot is an individual who, upon information and belief, lives at 2308 South County Road 1120; Midland, Texas 79706. He can be served at home or at his place of work at 2700 FM 1379; Midland, Texas 79706. However, Plaintiffs anticipate that GISD's attorney, Dennis J. Eichelbaum, will agreed to accept service by email at deichelbaum@edlaw.com.

### V. <u>INFORMATION ON TITLE IX – SEX-BASED DISCRIMINATION.</u>

#### A. Title IX - Law & Regulations

**18.**     Title IX provides, *inter alia*:

> *No person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.*[3]

**19.**     Title IX's purpose is to prevent bullying, harassment, sexual harassment, assault, and sexual assault based upon sex, gender, or gender stereotypes and to remedy the effects of discrimination based on sex, gender, or gender stereotypes.

---

[3] *See* 20 U.S.C. §§1681 - 1688.

20.      Federal guidance requires school personnel understand their legal obligations to address harassment based upon sex, gender, and gender stereotypes, and explains that these individuals are in the best position to recognize and prevent such harassment, lessen harm to victims, and remedy the effects of harassment.[4]

21.      In *Davis v. Monroe County Board Of Education*,[5] the Supreme Court set forth the requisite elements of a Title IX violation by a school for student-on-student sexual harassment: (1) the student victim must be member of a protected class and be bullied, harassed, or assaulted because of their membership in that class (*e.g. based upon sex, gender, or gender stereotypes*); (2) the harassment is severe and pervasive such that the student victim experiences a deprivation of educational opportunity; (3) the school was on notice of the harassment; and (4) the school was deliberately indifferent to the harassment. In addition, the Supreme Court confirmed that a public-school district has a threshold duty to investigate alleged sexual harassment in a timely manner, a duty to prevent ongoing and future harassment of the student victim, and a duty to remedy the effects of past harassment.

### B.  GISD's Policies & Procedures

22.      GISD has policies and procedures related to *Student Welfare* and protecting students from Discrimination, Harassment, & Retaliation which address, *inter alia*, student-on-student sexual harassment and assault. These policies define sexual harassment and set out reporting requirements after an allegation of sexual harassment as well as GISD's required investigatory procedures.

23.      GISD's policies include specific examples of sexual harassment including, *in pertinent part,* "sexual advances; touching intimate body parts or coercing physical contact that is sexual in

---

[4] *See* 62 Fed. Reg. 12034 [Mar. 13, 1997]).
[5] *Davis v. Monroe County Board Of Education*, 526 U.S. 629 (1999).

nature; jokes or conversations of a sexual nature; and other sexually motivated conduct, communications, or contact."

24.     GISD's policies further prohibit retaliation by a student or GISD employee against a student alleged who makes a good faith report of sexual harassment. The policies include the following examples of retaliation: threats, rumor spreading, ostracism, assault, destruction of property, unjustified punishments, and unwarranted grade reductions.

25.     Pursuant to GISD's policies and procedures, in response to an allegation of sexual harassment, GISD is required to complete an investigation in a timely manner (*generally less than 10 days*), develop a written report, file the written report with the GISD Title IX coordinator, and notify the victim's family of the outcome of the investigation.

26.     GISD's investigation report must address whether the prohibited conduct occurred, and the student victim has the right to appeal this determination through GISD's grievance procedures and with the Office of Civil Rights of the U.S. Department of Education ("OCR").

27.     Upon a determination of prohibited conduct, GISD is required to promptly respond with appropriate disciplinary action, and GISD's policies provide a non-exhaustive list of potential corrective actions including, *inter alia*, provision of training and/or counseling to the victim, school-wide implementation of a comprehensive education program, and follow-up inquiries to assess the effectiveness of corrective actions.

## VI. <u>STATEMENT OF FACTS</u>

**28.**     Plaintiffs incorporate by reference all above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

### A. T.F.

**29.**     T.F.'s birthday is in 2004, and he is currently 16 years of age. T.F. is male. At the time of the sexual harassment and sexual assaults, T.F. was 14 years of age and in 8th grade at Greenwood Brooks Middle School in GISD.

**30.**     T.F. resides with his parents, Leah F. and Ted. F.

**31.**     T.F. is very athletic and participates in numerous sports at GISD. He is an avid outdoorsman and loves to hunt, fish, golf, wake surf, and snow ski. T.F. enjoys spending time with his family and friends, and he is always ready to play a game of dominoes with his grandparents. T.F. has been a member of "Air it Out"—a football leadership academy—for 3 years and attends the academy's workshops several times per year. He adores children and finds opportunities to help them cultivate the same love for sports that he has.

**32.**     During a significant period of time that forms the basis of this *Complaint*, T.F. was a student in GISD.

### B. The Sexual Assaults.

**33.**     From approximately November 29, 2018 through January 14, 2019, T.F. was violently and repeatedly sexually assaulted by other male students (collectively the "perpetrators") while at GISD.

**34.**     The perpetrators consisted of one primary perpetrator (the "main perpetrator") who was involved in every sexual assault and a core group of male students whose job was to restrain T.F. while the main perpetrator sexually assaulted him.

35.     During each assault, the perpetrators would forcefully grab T.F. and shove his body to the ground where they would physically and forcefully restrain him as he attempted to escape. Then the main perpetrator would pull down his shorts or pants and underwear and crouch down and press his anus onto T.F.'s face directly over his nose and mouth, making skin-to-skin contact. If T.F. attempted to turn his head away so that his face would break contact with the main perpetrator's flesh, the other perpetrators would forcefully grab T.F.'s head and hold it in place while he was sexually assaulted.

36.     During the first sexual assault to T.F, the main perpetrator pressed his anus onto T.F.'s face for approximately 30 seconds, but the duration increased with each successive assault. Sometimes the main perpetrator would press his anus against T.F.'s nose and mouth to the point where T.F. was unable to breathe.

37.     After the first sexual assault, when T.F. saw the perpetrators in the GISD locker room, he would immediately try to leave to avoid being sexually assaulted. However, the perpetrators would follow T.F. to the door, grab him, and forcefully drag him back to be sexually assaulted.

38.     Also, during the same approximate time period, the perpetrators sexually assaulted several other male GISD students in a similar manner. Upon information and belief, there were a total of 7 victims of these sexual assaults.

39.     The sexual assaults occurred multiple times, in multiple locker rooms and busses, and in multiple cities.

40.     Each sexual assault occurred on a GISD campus, at a GISD sponsored event, or while traveling on GISD transportation to or from a GISD sponsored event.

41.     During each sexual assault, the students were unsupervised.

### C.      The Sexual Assaults Are Reported

**42.**      On or about January 17, 2019, a male GISD student reported that other male GISD students sexually assaulted another male GISD student during a bus trip for a school basketball game. Upon information and belief, this student victim was restrained by more than one of the perpetrators while the main perpetrator struck the victim's face with his penis.

**43.**      Based on the sheer number of sexual assaults that took place during the time period at issue as well as the fact that there were multiple victims, Plaintiffs contend that GISD had notice or – *at the very least* - should have been on notice of the ongoing incidents of sexual assault prior to January 17, 2019.

**44.**      On or about the evening of January 17, 2019, GISD Coach Larry Galindo placed a phone call to T.F. regarding the reported bus incident. During that call, T.F. told Coach Galindo about the numerous sexual assaults to male GISD basketball team players, including himself.

**45.**      On or about January 18, 2019, GISD summoned the male basketball players and separately questioned them regarding the sexual assaults. Several of T.F.'s teammates provided written statements detailing numerous sexual assaults by the perpetrators. Upon information and belief, at least one of the perpetrators confessed to committing the acts of sexual harassment and sexual assault in his statement.

**46.**      GISD administrators - including Principal John Paul Huber, Assistant Principal Jennifer Ruiz, Assistant Principal Jayme Tedder, former Athletic Director Jarod Sanderson, Coach Kendall Thomas, Coach Galindo, and GISD Police Chief Mitch Russell - reviewed the students' statements and specifically instructed these students – *including both victims and perpetrators* – to refrain from speaking about the sexual assaults.

47.     Thereafter, at about 11:00 AM that day, AP Tedder used T.F.'s cell phone to call T.F.'s father – Ted. F. – and explained to him that there was an "issue" related to an assault of a sexual nature and asked for T.F.'s parents to come to the school.

48.     When T.F.'s parents arrived at the school, they immediately inquired as to whether GISD contacted law enforcement; GISD administrators replied that they had not, and that GISD had only contacted their attorney. They further explained that they wanted to speak with the parents of the students involved *before* contacting law enforcement – presumably to gauge the parents' reactions to the situation to determine whether dissemination of the events could be prevented.

49.     When T.F.'s parents advised they themselves would contact law enforcement if GISD continued to refuse, GISD administrators reluctantly agreed to call the sheriff's office, and Officer Russell excused himself, ostensibly to make the call.

50.     In addition, no one from GISD ever contacted the Department of Family Protective Services ("DFPS") on behalf of any of the student victims which is a direct violation of §261.101(b) of the Texas Family Code.

51.     On or about January 22, 2019, AP Tedder gathered T.F. and the other basketball students and *again* instructed them to remain silent about the sexual harassment and sexual assaults; AP Tedder explained "[w]e don't want this getting out."

52.     On or about January 25, 2019, T.F.'s parents spoke with Officer Fuentes and Officer Flores of the Midland County Sherriff's Office. These officers explained to T.F.'s parents that the police report made by GISD Officer Russell included no names (no names of any victims and no names of any alleged perpetrators), no details of the acts reported, and the report had characterized the incidents as "hazing". Moreover, the GISD police report provided no indication that the incidents

were sexual in nature. As such, Officer Russell clearly filed the incident report in this manner to intentionally avoid any investigation by the sheriff's office.

53.     Due to the inaccurate and incomplete report made by GISD, T.F.'s parents provided a statement to sheriff's office. The officers at the sheriff's office stated to T.F.'s parents that the events they described were not included in the report made by GISD, and that GISD's report simply and vaguely stated that there had been a hazing incident at GISD.

54.     On or about January 31, 2019, T.F. submitted to a forensic interview with the Midland Rape Crisis & Child Advocacy Center.  Midland County Sergeant Steve Skaggs met with T.F.'s parents after the interview and specifically commented that the sexual assaults were 2nd degree felonies.

55.     On or about February 6, 2019, Leah F. attended a regular gathering at the home of a GISD school board member and his family. The wife of the school board member approached Leah F. during the gathering and stated that she was sorry T.F. was involved in the incident and commented "boys will be boys" – a sentiment often used to normalize males being violent, aggressive, and predatory. Leah F. was upset and did not return to the regular gatherings thereafter. These statements by the wife of a school board member clearly show that (1) the school board member at issue improperly disseminated private and FERPA[6] protected information and (2) that the sexual assaults had been trivialized by the GISD school board due to the fact that they were perpetrated by male students on male students.

56.     In or about February 2019, one of the other student victims submitted to a forensic interview with Midland Rape Crisis & Child Advocacy Center. However, 2 of the student victims

---

[6] *Family Education Rights & Privacy Act*

declined to submit to forensic interviews – likely due to fear of retaliation by GISD in light of GISD's repeated directives to the students to refrain from speaking of the sexual assaults.

57.    On or about March 8, 2019, while on the GISD campus, the 2 criminally charged perpetrators were arrested and detained by the Midland County Sheriff's Office.

58.    On or about March 18, 2019, during a conversation in which he admitted that the school "did some things wrong" in their handling of the situation, AP Tedder advised T.F. that he would change the class schedule of the main perpetrator so that T.F. would not have to share classes with his assailant. However, GISD failed to implement this change.

59.    On or about March 28, 2019, another GISD student victim confided in T.F. that AP Tedder and GISD Counselor Heather Brown escorted him to the school's main office where Officer Russell spoke with him alone. Officer Russell attempted to convince the student victim to keep quiet about the sexual assaults and made statements such as "everything [was] over" and "[his] voice wouldn't matter to the case" and that "[his] parents should agree that [his] voice wouldn't matter".

60.    In addition, this student victim explained to T.F. that he did not want to report anything about the sexual assaults, because he was afraid the assaults would worsen. He stated to T.F. that he knew GISD would not take any action to protect him. Both students stated their opinions that GISD did not take these types of incidents seriously and that GISD was far more concerned with the hair/dress code[7] than with taking appropriate action to ensure student safety.

61.    In or about April 2019, T.F. began counseling sessions at the Midland Rape Crisis & Child Advocacy Center, and he missed school due to the counseling sessions.

---

[7] This part of the students' conversation is in reference to a strictly enforced dress code policy implemented by GISD that was alleged to be racially discriminatory.

62.     On or about May 10, 2019, Leah F. and Ted F. met with Sheriff Gary Painter and Chief Deputy Rory McKinney of the Midland County Sheriff's office to provide information regarding the sexual assaults. Both Sheriff Painter and Deputy McKinney agreed that the incidents were not only serious in nature, but *severe*.

63.     On or about June 3, 2019, Leah F. met with Superintendent Edward A. Elliot - *the designated Title IX Coordinator* – about the sexual assaults. During that meeting, Leah F. read aloud a letter from T.F.'s therapist that included explicit details of the sexual assaults on T.F., and she left a copy of the letter with Superintendent Elliot.

64.     In addition, Leah F. told Superintendent Elliot that T.F. was very uncomfortable at the thought of being in a locker room with the main perpetrator and was still attending therapy/counseling sessions due to the sexual assaults. She explained that GISD had done nothing to protect T.F. from future sexual assaults.

65.     Leah F. also attempted to confirm that Superintendent Elliot was the GISD Title IX Coordinator. In response, Superintendent Elliot was uncertain of whether he was in fact the GISD Title IX Coordinator and stated "[t]hat's a good question. . . .", and he advised he would "check on that". At that time and presently, the GISD policies and procedures list Superintendent Elliot as the GISD Title IX Coordinator.

66.     On or about June 15, 2019, T.F.'s parents submitted to Superintendent Elliot a *formal* Title IX complaint regarding the sexual harassment and multiple sexual assaults to T.F.

67.     On or about on June 18, 2019, Superintendent Elliot responded to the Title IX complaint by letter and advised that the matter was already investigated in January 2019 and turned over to law enforcement. Superintendent Elliot failed to mention whether GISD completed a Title IX investigation, nor did he provide any details regarding the outcome of any investigation.

68.     On August 8, 2019, the Midland County District Attorney's Office notified GISD of criminal charges against 2 of the perpetrators - both GISD students at that time.

69.     In or about August 2019, T.F.'s football locker was assigned directly beside one of the criminally charged perpetrators and only a few lockers away from the main perpetrator's locker (who was also criminally charged), sandwiching his locker between 2 of his assailants.

70.     On or about September 12, 2019, Sergeant Steve Skaggs notified GISD of the resolution of the charges against one of the 2 perpetrators charged.

71.     On or about December 2019, the GISD football team traveled to a playoff game, and GISD coaches designated hotel room assignments (4 football players per room).  A fellow GISD parent whose son was assigned to the same hotel room as the main perpetrator contacted Leah F. about the situation, and Leah F. confirmed that the main perpetrator was charged with a felony in or about August 2019.

72.     The other parent then contacted the GISD Athletic Director[8] via text message and inquired whether there would be adult supervision at all times in her son's hotel room and, if not, she advised that she did not want her son to share a hotel room with the main perpetrator. The GISD Athletic Director responded via text message: "We can change that up, I apologize, most of the high school coaches know very little about the incidents from last year."

73.     The hotel room assignments were modified and the perpetrator and the son of the other parent were separated. However, upon information and belief, the perpetrator was simply switched to a different room with other players without notifying their parents.

---

[8] Of note, this GISD Athletic Director began employment with GISD in his role as athletic director in or about March 2019.

**D.     The Criminal Proceeding**

**74.**     On March 16 – 17, 2020, there was a juvenile hearing regarding the charges against the main perpetrator at the Midland County Courthouse in front of Judge K. Kyle Peeler. The main perpetrator pled "true" to the offence of Unlawful Restraint of a child under 17, and the hearing was for determination of sanctions.

**75.**     Several people testified, including T.F. and Leah F.  T.F. was the victim listed for the case.

**76.**     At the criminal proceeding, T.F. testified, *in pertinent part*, that the main perpetrator was the "leader" of the group of students who sexually assaulted him and his teammates. T.F. further testified that he would try to escape from the perpetrators to get somewhere with adult supervision. He also testified that it was common for no adults to be present in the locker rooms, and that he attempted to use the locker rooms at specific times to avoid the perpetrators.

**77.**     In addition, Cori Armstead, the mother of a former GISD student, testified at the criminal proceeding about how her son was incessantly bullied by the main perpetrator during the 2017-2018 school year. She testified that the bullying by the main perpetrator began with name-calling and progressed to physical assaults. She further testified that she reported the bullying multiple times, but GISD did nothing to stop it, and that she withdrew her son from GISD due to the bullying and the effects of same in or about August 2018 – prior to her son's 8th grade school year.

**78.**     Thereafter, the main perpetrator was adjudicated of the felony offense of Unlawful Restraint of a child under 17, and he received 1-year probation, 1-year deferred sex offender status, and mandatory counseling.

**79.**     On or about March 17, 2020, the Midland County District Attorney notified GISD of the adjudication of the main perpetrator and the sanctions imposed.

### E.   GISD Retaliates

**80.**   On or about May 19, 2020, the family's attorney[9] sent to GISD a letter of representation outlining the various violations by GISD, including violations of Title IX and constitutional violations actionable under Section 1983 of the Civil Rights Acts of 1964. Therein, the family's attorney stated the family's intention to file a lawsuit against GISD based on such violations.

**81.**   On or about May 22, 2020, the GISD Athletic Director contacted Ted F. and requested a business meeting. This request was not unusual as GISD had purchased athletic equipment from Athletic Supply, Inc. – a closely held corporation of which Ted F. owns a percentage - for approximately 40 years, and the GISD AD and GISD head coaches are primarily responsible for orders on behalf of GISD.

**82.**   That night the GISD Athletic Director went to Leah F.'s and Ted F.'s home for the business meeting he requested.

**83.**   During that meeting, the GISD Athletic Director stated to Leah F. and Ted F. that Superintendent Elliot told him that it was in his "best interest" to discontinue GISD's established practice of purchasing athletic equipment from Athletic Supply, Inc.

**84.**   Also, during that meeting, the GISD Athletic Director stated his belief that Superintendent Elliot told him to discontinue purchasing GISD equipment from Athletic Supply, Inc. as a direct result of Plaintiffs' notification to GISD that they intended to pursue legal action against GISD pursuant to Title IX and other laws and regulations.

**85.**   The GISD Athletic Director further explained to Leah F. and Ted F. during that meeting that he had not been told by GISD administrators or anyone else about the sexual assaults to T.F., was "in the dark" regarding the matter, and – *as a result* – he did nothing in response to same.

---

[9] The undersigned attorney.

86.     Upon information and belief, Plaintiffs submit that Superintendent Elliot also approached other GISD personnel and advised them to discontinue conducting business with Athletic Supply, Inc. on behalf of GISD.

87.     Since May 22, 2020, GISD has placed no new orders with Athletic Supply, Inc.

88.     Upon information and belief, due to Superintendent Elliot's directive, GISD personnel sought and/or began purchasing equipment - customarily purchased from Athletic Supply, Inc. for many years - from companies other than Athletic Supply, Inc.

89.     In addition, since May 22, 2020, GISD personnel who had been in regular communication with salesmen at Athletic Supply, Inc. began avoiding communication with Athletic Supply, Inc. salesmen regarding equipment orders and services other than to indicate they were instructed to purchase equipment from companies other than Athletic Supply, Inc.

**F.      Beginning of the 2020-2021 School Year**

90.     Due to the COVID-19 pandemic, many schools are currently permitting students the option to receive education via online/virtual leaning for the 2020-2021 school year.

91.     In response to the fact that many students are, in fact, opting for online/virtual leaning, the University Interscholastic League ("UIL") provided guidance regarding participation in face-to-face extracurricular activities, including school athletic sports. Specifically, UIL explained that "[s]tudents participating in remote learning offered by their school district . . . may participate in UIL activities if they meet all other UIL eligibility requirements."[10]

92.     Like many other schools, GISD students may opt to receive their education via online/virtual leaning.

---

[10] *See University Interscholastic League webpage at https://www.uiltexas.org/policy/covid-19.*

93.     Prior to the beginning of the 2020-2021 school year, GISD distributed to GISD parents/guardians a document entitled "Greenwood ISD 2020-2021 Moving Forward" in which GISD presented 2 options: Option 1: Ranger Nation Learning (face-to-face) and Option 2: Ranger Remote Learning.

94.     Despite the UIL's guidance permitting participation in extracurricular activities by online/virtual students, this GISD document further provided "[s]tudents wishing to participate in or attend extracurricular activities within the district must take part in the face-to-face instruction." As such, in order to play on GISD sports teams, including the varsity football team, T.F. was forced to choose Option 1 (face-to-face) learning. In order to avoid contact with the main perpetrator as much as possible, T.F. would have opted for online/virtual learning if he had been permitted to participate in extracurricular activities.

95.     As set forth herein previously, T.F. is quite athletic and participation in team sports is very important to him. In fact, as a sophomore in high school, he is currently the starting quarterback for the GISD Varsity football team.

96.     Abhorrently, GISD placed T.F. in an elective class – *one that he did not specially choose* – with the main perpetrator, the individual who repeatedly sexually assaulted him and several other of his teammates.

97.     Soon after school began this school year, Leah F. and Ted F. noticed that T.F.'s mood was drastically worsening. T.F. was angry and irritable, especially after coming home from school, and he appeared depressed. T.F. and Ted. F. began to have arguments due to the changes in T.F., and T.F ultimately told Ted F. that he had been placed in a class with the main perpetrator which was negatively affecting him. T.F. was angry and hurt that GISD continued to fail to protect him.

**G.      General Summary of GISD's Acts & Omissions**

**98.**     GISD continues to refuse to take appropriate actions in response to the sexual harassment and sexual assaults of T.F.

**99.**     GISD failed and refused to remediate the effects of the sexual harassment and sexual assaults on T.F.; never offered or conducted a psychological evaluation for T.F., never offered T.F. counseling services, and never implemented a safety plan to keep T.F. safe at school.

**100.**     In fact, no one from GISD even *approached* T.F. to determine his needs as a result of being being repeatedly and forcefully sexually assaulted at school.

**101.**     To the contrary, GISD repeatedly attempted to bully T.F. and the other student victims into staying quiet about the sexual harassment and sexual assaults.

**102.**     GISD failed and refused to complete a Title IX investigation, failed to provide to T.F.'s parents the outcome of any investigation, and failed to permit them to appeal any such outcome.

**103.**     From the beginning, GISD administrators repeatedly attempted to minimize and conceal the sexual assaults.

**104.**     GISD administrators forbade GISD students from speaking about the sexual assaults on multiple occasions, resisted and attempted to avoid their duty to make a police report, and only reported the matter to law enforcement because T.F.'s parents' stated that they themselves would file a report if necessary.

**105.**     Moreover, when GISD administrators made the police report, they provided vague facts with no victim or perpetrator names and no indication of the sexual nature of the assaults. They also failed to report the matter to DFPS.

**106.**     GISD administrators collectively mischaracterized the numerous sexual assaults at GISD as "hazing" in an attempt to sterilize and minimize the egregious nature of the sexual assaults.[11]

**107.**     This inappropriate mischaracterization undermines the trauma suffered by T.F.

**108.**     It is unlikely GISD administrators would have referred to violent sexual assault of a female student as "hazing". Specifically, if the main perpetrator and the other perpetrators had instead preyed on same-aged female GISD students – *approaching these females in their own locker room, forcefully grabbing these females and throwing them to the floor where at least 2 male perpetrators would restrain them while they struggled to break free and hold their heads in place while the main perpetrator removed his shorts and underwear, crouched over these females' faces, and pressed his anus into their noses and mouths making it difficult for them to breathe,* it is highly improbable that GISD administrators would have dared to refer to these acts as "hazing". Certainly, these violent acts are not hazing.

**109.**     By inappropriately categorizing the sexual assaults as *hazing*, GISD sent the message that egregious acts of sexual violence are innocuous or even traditional for school-aged boys participating in athletics, empowered other perpetrators to commit such acts, and supported the continuation of a culture of sexual violence at GISD. To be clear, the perpetrators were not engaging in "hazing" behavior – they were committing sexual assault.

**110.**     Moreover, by combining multiple sexual assaults into a single category–*i.e. hazing*—GISD administrators sought to avoid their own discomfort generated by the thought of repeated same-

---

[11] In 2014, at the request of the Department of Defense Sexual Assault Prevention and Response Office, the RAND National Defense Research Institute conducted an independent assessment of the rates of sexual assault, sexual harassment, and gender discrimination in the military and found that, inter alia, men who are sexually assaulted are more likely than women to experience multiple assaults and to describe an event as hazing or intended to abuse or humiliate. *See* Morral, Andrew R., Kristie L. Gore, and Terry L. Schell, eds., Sexual Assault and Sexual Harassment in the U.S. Military: Volume 2. Estimates for Department of Defense Service Members from the 2014 RAND Military Workplace Study. Santa Monica, CA: RAND Corporation, 2015https://www.rand.org/pubs/research_reports/RR870z2-1.html. Also available in print form.

*Plaintiffs' Original Complaint*                                                                                                    20

sex, male-on-male, violent sexual assault. However, GISD administrators' discomfort does not absolve them of their failures in this regard.

111.   GISD failed to train GISD administrators and staff regarding appropriate response to allegations of male-on-male sexual harassment and sexual assault. This failure to train is evidenced by the fact that the designated Title IX Coordinator was unaware of such designation, the mischaracterization of the sexual assaults as "hazing", and GISD administrators' and staff's obvious lack of knowledge regarding the prohibition of retaliatory acts in response to assertions of an individual's rights under Title IX and the U.S. Constitution.

## H.   Injuries & Damages

112.   The sexual harassment and sexual assaults and GISD's inappropriate response thereto negatively affected and continues to negatively affect T.F.

113.   Being part of a school athletic team, supporting his school, and maintaining a sense of school pride are extremely important to T.F. Over the years, T.F. has played multiple sports at GISD, and he takes quite seriously and is honored by the fact that these athletic undertakings designate him as a GISD representative. T.F. endeavored to represent GISD with love, pride, and dignity, and he anticipated GISD administrators would support him if and when the time came that he needed their support.

114.   But when the time came – *i.e. when T.F. was repeatedly and violently sexually assaulted at school and school sponsored events* – GISD administrators did not support T.F. Quite the opposite, in fact – they told T.F. not to talk about the sexual assaults in order to preserve GISD's reputation and did nothing to protect T.F. or remediate the effects of the sexual assaults on T.F.

115.    Due to GISD's failures as set forth herein, T.F. feels hurt and betrayed. His ability to trust adults – especially GISD authority figures – was seriously damaged. In addition, T.F. fears additional retaliation from GISD administrators, school resource officers, and even his coaches.

116.    Due to GISD's failures as set forth herein, T.F. felt and continues to feel unprotected, unsupported, and unsafe at school. T.F. is afraid that he will be sexually assaulted again at school in GISD.

117.    Due to GISD's failures as set forth herein, T.F. suffered from and continues to suffer from shame, fear of people, lack of trust in authority figures, anxiety, and depression. In addition, T.F.'s mood changed significantly – he became withdrawn, quiet, and far less expressive and jovial.

118.    In addition, GISD retaliated against T.F., Ted F., and Leah F. for asserting their rights under Title IX by purposefully discontinuing their business relationship with Athletic Supply, Inc. Such retaliatory acts caused monetary damages to Plaintiffs.

I.    **Additional Facts Regarding Knowledge and Pattern & Practice**

119.    During the 2017-2018 school year – the school year directly preceding the school year in which T.F. was sexually assaulted, the main perpetrator incessantly and aggressively bullied former GISD student K.A.

120.    The main perpetrator called K.A. names and would slap K.A.'s forehead, the back of his neck, and his head. In addition, the main perpetrator thumped K.A.'s ears so hard that K.A. would have bruises.

121.    In the fall semester of the 2017-2018 school year, K.A. told his teachers about the constant bullying, but he was dismissed and told to sit down. His teachers did nothing to stop the bullying.

122.    The same semester, K.A reported the bullying to Coach Thomas, the head of athletics at the middle school. Coach Thomas assured K.A. that he would handle the issue. But he did nothing.

**123.**   When the bullying did not stop, K.A. approached Coach Thomas *again*. But the bullying continued.

**124.**   In or about the spring semester of the 2017-2018 school year, K.A.'s father spoke with Assistant Principal (AP) Jayme Tedder about the bullying. But AP Tedder never followed up with K.A.'s father regarding the bullying, and the bullying continued.

**125.**   K.A. also reported the bullying to one of his teachers through a message via an online learning platform utilized by the school. Again, nothing was done, and the bullying continued.

**126.**   Exasperated, K.A.'s mother sought the advice of a friend who was also a current or former GISD employee. The friend told K.A.'s mother that when teachers report bullying to GISD administrators, such reports are ignored.

**127.**   The bullying progressively intensified and worsened, and it caused damages and injuries to K.A.

**128.**   K.A.'s parents withdrew him from GISD in or about August 2018 before his 8th grade year because of the bullying and GISD's failure to stop it.

## VII. <u>STATE ACTION</u>

**129.**   Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

**130.**   GISD representatives, in any official and individual capacities and in all matters, were acting under color of state law when they subjected T.F. to the wrongs and injuries set forth herein.

## VIII. <u>TITLE IX</u>
## •<u>CLAIMS AGAINST GISD</u>•

**131.**   Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

132.    Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20

U.S.C. § 1681 *et seq.*, ("Title IX") provides that a public entity may be liable under Title IX for

discrimination based upon sex, gender, or gender stereotypes.

133.    To maintain a cause of action under Title IX, the claimant must be a member of a protected

class; must be treated differently because of membership in that class; the defendant entity must

be on notice of the allegations; the defendant entity must be deliberately indifferent to those

allegations; and the claimant must have experienced a deprivation of educational opportunities

and/or other damages.

134.    T.F. easily satisfies all these threshold requirements and seeks recovery accordingly.

135.    Plaintiffs further contend that GISD's failure to have effective policies, procedures,

practices, and customs in place to assure T.F. was not a victim of bullying, harassment, or assault

based upon sex, gender, or gender stereotypes violated T.F.'s rights pursuant to Title IX of the

Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. §1681 *et seq.*,

upon which T.F. now seeks recovery.

136.    In addition, T.F. has a private cause of action against GISD for violation of the rules and

regulations promulgated pursuant to Title IX.

137.    GISD's failures caused injuries to Plaintiffs.

## IX. TITLE IX – RETALIATION
## • CLAIMS AGAINST GISD •

138.    Plaintiffs incorporate by reference all the above-related and below-related paragraphs with

the same force and effect as if herein set forth fully.

139.    In addition to their causes of action on behalf of T.F. under Title IX, Ted F. and Leah F.

bring causes of action against GISD for retaliation under Title IX <u>both on behalf of T.F. as well as</u>

<u>in their individual capacities.</u>

*Plaintiffs' Original Complaint*                                                                                              24

140.    As noted by the 5th Circuit, the courts clearly recognize retaliation claims under Title IX in response to reports of sexual harassment.[12] Specifically, Title IX incorporates the retaliation language of Title VI: "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by" Title IX.[13]

141.    The U.S. Supreme Court held that "retaliation against individuals because they complain of sex discrimination is 'intentional conduct that violates the clear terms of [Title IX].'"[14]

142.    Additionally, the U.S. Supreme Court held that Title IX "does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint."[15] Accordingly, Ted F. and Leah F. have *individual* causes of action against GISD for retaliation under Title IX.

143.    To maintain a cause of action for retaliation under Title IX, the plaintiff must establish a *prima facie* case for same by showing: (1) a protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action.[16]

144.    T.F., Ted F., and Leah F. easily satisfy the threshold requirements for a *prima facie* showing of retaliation under Title IX and seek recovery accordingly.

145.    Specifically, GISD retaliated against Plaintiffs F. for asserting protected rights under Title IX by purposefully discontinuing their business relationship with Athletic Supply, Inc., including

---

[12] *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011).
[13] 34 CFR 100.7(e) (Title VI retaliation prohibition); 34 CFR 106.71 (Title IX; incorporating the retaliation language of Title VI regulations).
[14] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 183, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) (*quoting Davis*, 526 U.S. at 642, 119 S. Ct. 1661.)
[15] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 183 (2005).
[16] *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998); *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011); 34 C.F.R. §106.71 ("The procedural provisions applicable to title VI of the Civil Rights Act of 1964 are hereby adopted and incorporated herein by reference.").

the discontinuation of equipment purchases. Such retaliatory acts caused monetary damages to Plaintiffs.

146.  Plaintiffs further contend that GISD committed retaliatory acts in violation of Title IX based on GISD representatives' directives to T.F. to refrain from discussing the sexual assaults.

147.  GISD' failures caused injuries to Plaintiffs.

## X. EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT • CLAIMS AGAINST GISD •

148.  Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

149.  Plaintiffs contend, in addition and in the alternative to the above, that the acts and omissions of GISD violated the rights of Plaintiffs pursuant to the 14th Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983, because such acts and omissions violated T.F.'s right to family integrity, life, liberty, and the pursuit of happiness.

150.  In addition, pursuant to the Open Courts provision of the Texas Constitution, Article I, Section 13, Plaintiffs have the right to an "Open Court" to which they may seek remedies to the acts and omissions of GISD as noted herein, pursuant to 42 U.S.C. §1983.

151.  The U.S. Constitution provides that no state shall deny any person within its jurisdiction equal protection of the law.

152.  GISD's acts and omissions violated Plaintiffs' rights under the Equal Protection Clause of the 14th Amendment. As such, T.F. was a victim of discrimination as a *class-of-one* as contemplated by the Equal Protection Clause of the 14th Amendment for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

153.  During the relevant time period contemplated by this cause of action, GISD had an actual policy, practice, and custom of conscious and deliberate indifference to federal law, federal and

state administrative directives, and GISD policies and procedures in regard to the treatment of T.F., and such failures were a moving force in the injuries to T.F. for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

154.    Specifically, GISD had a custom and practice of refusing to fulfill the requisites of Title IX Jurisprudence and failing to investigate allegations of bullying and harassment after receiving complaints that such actions were based upon sex or gender.

155.    In addition, the GISD school board failed to correctly supervise staff regarding laws, regulations, and directives as noted above. Such failures rise to the level of a separate violation of the 14th Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

156.    Additionally, the GISD School Board failed to train GISD administrators, employees, and other staff regarding laws, regulations and directives as noted herein. Such failures rise to the level of a separate violation of the 14th Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

157.    GISD's failure to appropriately train GISD administrators, employees, and other staff regarding appropriate methods to address complaints of discrimination based upon sex and – *in particular* - male on male sexual assault and sexual violence violates the Equal Protection Clause of the 14th Amendment. The need for and lack of such training is quite obvious given that the GISD Superintendent and designated Title IX Coordinator was uncertain as to whether he was in fact the designated Title IX Coordinator.

158.    Plaintiffs further contend that GISD had an actual policy, custom, or practice of concealment of sexual violence at GISD – particularity *male on male* sexual violence, which is

demonstrated by the pattern of attempted concealment of the repeated sexual assaults of T.F. and several other members of the GISD boys' basketball team.

159.    As set forth more fully above, from the beginning, GISD administrators repeatedly attempted to minimize and conceal the sexual assaults. GISD forbade T.F. and other members of the GISD boys basketball team from speaking about the sexual assaults on multiple occasions, attempted to circumvent their duty to make a police report, reported inaccurate and incomplete information to law enforcement, failed to report the assaults to DFPS, failed to conduct a Title IX investigation and otherwise comply with the requirements of Title IX, failed to take appropriate actions to remediate the effects of the sexual assaults to T.F., failed to take appropriate actions to prevent future sexual assaults, and even retaliated against T.F. and his parents for asserting violations of their constitutionally protected rights.

160.    Plaintiffs further contend that GISD had an actual policy, custom, or practice of minimization and trivialization of male-on-male sexual violence at GISD.

161.    Because the sexual assaults were perpetrated by male students *on a male student*, GISD administrators repeatedly characterized the multiple sexual assaults collectively as "hazing" in an attempt to sterilize and minimize the egregious nature of the sexual assaults. This mischaracterization served not only to undermine the trauma suffered by T.F. but discriminated against T.F. based on sex in violation of the Equal Protection Clause.[17]

162.    Moreover, as evidenced by the fact that the wife of a GISD school board member approached Leah F. and openly minimized the sexual assaults by commenting "boys will be boys",

---

[17]The OCR specifically advised that the label ascribed to an incident - such as bullying, hazing, or teasing – does not determine the school's required response. The OCR explained that schools must assess the nature of the conduct for civil rights implications - including those related to discrimination based on sex – and respond in accordance with applicable federal civil rights statutes and regulations. The OCR explained that "by limiting its response to a specific application of its anti-bullying disciplinary policy, a school may fail to properly consider whether the student misconduct also results in discriminatory harassment." Dear Colleague Letter: Harassment and Bullying (2010): *https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.html*

the GISD school board itself trivialized the sexual assaults because they were male-on-male sexual assaults, thereby discriminating against T.F. *based on his sex.*

163.    Plaintiffs further contend that GISD's failure to have effective policies, procedures, practices, and customs in place to protect T.F. violated his rights pursuant to the Equal Protection Clause of the 14th Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

164.    Plaintiffs further contend that GISD had an actual policy, custom, or practice of permitting the boys basketball team members excessive time without adult supervision, thereby precipitating the sexual assaults.

165.    Plaintiffs further contend that Superintendent Elliot is a policymaker for purposes of the Equal Protection Clause and 42 U.S.C. §1983, because the GISD school board delegated certain policy-making power to Superintendent Elliot. Such delegation of power is evidenced by the fact that Superintendent Elliot was also appointed as the GISD Title IX coordinator.

166.    Specifically, Plaintiffs contend that Superintendent Elliot's dual roles as GISD Superintendent and GISD Title IX Coordinator presented a conflict of interest[18] and afforded Superintendent Elliot unchecked autonomy and a monopoly of power concerning decisions related to discrimination based on sex. Specifically, as superintendent, Superintendent Elliot's obvious primary concern was to *conceal* the sexual assaults, which directly conflicts with his duties and obligations as the GISD Title IX Coordinator.

167.    Plaintiffs further contend that the GISD school board is a policymaker for purposes of the Equal Protection Clause and 42 U.S.C. §1983.

---

[18] The OCR has cautioned that "designating a . . . superintendent, principal, or athletics director as the Title IX coordinator may pose a conflict of interest." Dear Colleague Letter (April 24, 2015 https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201504-title-ix-coordinators.pdf.

**168.**    In addition, GISD's acts and omissions discriminated against T.F. by treating him in a disparate manner as compared to other students similarly situated, thereby violating his rights pursuant to the *Equal Protection Clause* of the 14th Amendment, for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983 and 1988.

**169.**    GISD's acts and omissions caused injuries and damages to Plaintiffs.

## XI. <u>RETALIATION UNDER EQUAL PROTECTION CLAUSE</u>
### • <u>CLAIMS AGAINST GISD</u> •

**170.**    Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

**171.**    In addition to their causes of action on behalf of T.F. for violations of the Equal Protection Clause of the 14th Amendment of the Constitution of the United States pursuant to 42 U.S.C. §1983, Ted F. and Leah F. bring causes of action against GISD for retaliation under the Equal Protection Clause <u>both on behalf of T.F. as well as in their individual capacities.</u>

**172.**    Specifically, Plaintiffs contend that GISD retaliated against Plaintiffs for asserting their rights under the 14th Amendment of the Constitution of the United States pursuant to 42 U.S.C. §1983 by discontinuing the longstanding business relationship between GISD and Athletic Supply, Inc. Plaintiffs contend that such retaliatory acts violate the Equal Protection Clause.

**173.**    Plaintiffs further contend that GISD committed retaliatory acts in violation of the Equal Protection Clause based on GISD representatives' directives to T.F. to refrain from discussing the sexual assaults.

**174.**    GISD's acts and omissions caused injuries and damages to Plaintiffs.

## XII. EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT
### • CLAIMS AGAINST SUPERINTENDENT ELLIOT •

**175.**   Plaintiffs incorporate by reference all paragraphs above and below with the same force and effect as if herein set forth fully.

**176.**   At all times pertinent hereto, Defendant Edward Ariel Elliot was acting in his capacity as an employee of GISD and thus acting under the color of the law. Superintendent Elliot's acts and omissions caused injuries and Constitutional deprivations to T.F. and are enforceable pursuant to 42 U.S.C. § 1983.

**177.**   Specifically, and at all times relevant hereto, T.F. possessed both substantive and procedural due process rights including - *but not limited to* - a liberty interest in his bodily integrity and privacy which Superintendent Elliot violated through his acts and omissions.

**178.**   In addition, Superintendent Elliot violated T.F.'s civil rights pursuant to the *Equal Protection Clause* of 14th Amendment to the U.S. Constitution because he treated him differently and discriminated against him based upon his sex.

**179.**   Superintendent Elliot's acts and omissions caused injuries and damages to Plaintiffs.

## XIII. RETALIATION UNDER EQUAL PROTECTION CLAUSE
### • CLAIMS AGAINST SUPERINTENDENT ELLIOT •

**180.**   Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

**181.**   In addition to their causes of action on behalf of T.F. for violations of the Equal Protection Clause of the 14th Amendment of the Constitution of the United States pursuant to 42 U.S.C. §1983, Ted F. and Leah F. bring causes of action against Superintendent Elliot for retaliation under the Equal Protection Clause both on behalf of T.F. as well as in their individual capacities.

**182.**   Specifically, Plaintiffs contend that Superintendent Elliot retaliated against Plaintiffs for asserting their rights under the 14th Amendment of the Constitution of the United States pursuant to 42 U.S.C. §1983 by discontinuing the longstanding business relationship between GISD and Athletic Supply, Inc. Plaintiffs contend that such retaliatory acts violate the Equal Protection Clause.

**183.**   Superintendent Elliot's acts and omissions caused injuries and damages to Plaintiffs.

### XIV. <u>FIRST AMENDMENT</u>
### • <u>CLAIMS AGAINST GISD & SUPERINTENDENT ELLIOT</u> •

**184.**    Plaintiffs incorporate by reference all paragraphs above and below with the same force and effect as if herein set forth fully.

**185.**   Specifically, Ted F. and Leah F. assert causes of action on behalf of T.F. as well as in their individual capacities for retaliation by GISD and Superintendent Elliot under the 1st Amendment of the Constitution of the United States, for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

**186.**   Plaintiffs contend that GISD and Superintendent Elliot violated Plaintiffs' rights' pursuant to the 1st Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983 and §1988 by retaliating against them for advocating on behalf of their rights and complaining about the failures of GISD by discontinuing the longstanding business relationship between GISD and Athletic Supply, Inc.

**187.**   Plaintiffs further contend that GISD committed retaliatory acts in violation of the 1st Amendment of the Constitution of the United States based on GISD representatives' directives to T.F. to refrain from discussing the sexual assaults.

**188.**   GISD's and Superintendent Elliot's acts and omissions caused injuries and damages to Plaintiffs.

## XV. **RATIFICATION & RESPONDEAT SUPERIOR**

**189.**    Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

**190.**    GISD ratified the acts, omissions, and customs of GISD administrators, personnel, and staff.

**191.**    GISD ratified the acts, omissions, and customs of the GISD Police Department personnel and staff.

**192.**    The GISD Police Department ratified the acts, omissions, and customs of GISD Police Department personnel and staff.

**193.**    As a result, GISD is responsible for the acts and omissions of personnel and staff who were otherwise responsible for the safety of T.F.

## XVI. **PROXIMATE CAUSE**

**194.**    Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

**195.**    All of the foregoing acts and omissions of GISD, both separately and/or collectively, jointly and/or severally, whether in an official capacity or individual capacity, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XVII. **SPOLIATION**

**196.**    Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

**197.**    Plaintiffs hereby require and demand that GISD preserve and maintain all evidence pertaining to any claim or defense related to the sexual harassment and sexual assaults or other violations and factual allegations made the bases of this *Complaint* and the damages resulting

therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the sexual harassment/sexual assaults and other violations and facts set forth herein.

198.    Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

199.    In addition, pursuant to GISD's own policies and procedures, GISD is required to retain copies of allegations, investigation reports, and related records regarding any prohibited conduct in accordance with GISD's records retention schedules, but for no less than the minimum amount of time required by law.

## XVIII.  **DAMAGES**

200.    Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

201.    As a direct and proximate result of GISD's and Defendant Elliot's failures, Plaintiffs suffered injuries and damages for which they are entitled to recover, including - *but not limited to*:

      a.     Loss of educational opportunities;

      b.     Physical pain in the past and in the future;

      c.     Medical expenses in the past and in the future;

      d.     Mental anguish in the past and in the future;

      e.     Mental health expenses in the past and in the future;

      f.     Physical impairment in the past and in the future;

g.     Lost income and other economic loss in the past and in the future; and

h.     Various out-of-pocket expenses incurred by Plaintiffs due to the acts and omissions of GISD.

## XIX. <u>PUNITIVE DAMAGES</u>

**202.**   Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

**203.**   Plaintiffs reasonably believe the acts and omissions of GISD satisfy criteria for violation of civil rights and discrimination as contemplated by Section 1983 because the facts shock the conscience.

**204.**   With respect to Title IX claims for punitive damages, the 11th Circuit noted that the longstanding general rule is, absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief for a cause of action under a federal statute.[19] The 11th Circuit further held that congress did not intend to limit the remedies available in a Title IX suit.[20]

**205.**   As such, Plaintiffs seek punitive damages.

## XX. <u>ATTORNEYS' FEES</u>

**206.**   Plaintiffs incorporate by reference all the above-related and below-related paragraphs with the same force and effect as if herein set forth fully.

**207.**   It was necessary for Plaintiffs to retain the undersigned attorney to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C.

---

[19] *Franklin v. Gwinnet County Public Schools, et al.*, 503 U.S. 60 (1992) (*citing Bell v. Hood*, 327 U. S. 678 (1946); *also citing Davis v. Passman*, 442 U. S. 228 (1979).
[20] *Id.*

§1983 and 1988, the 14th Amendment, the 1st Amendment, and 20 U.S.C. § 1681 *et seq.*, (Title IX).

## XXI. <u>DEMAND FOR JURY TRIAL</u>

**208.**    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## XXII. <u>PRAYER</u>

**209.**    Plaintiffs pray for judgment against GISD and Defendant Elliot in the manner and particulars noted above, to include an amount sufficient to fully compensate them for damages suffered by them, a judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this lawsuit and appeal if required, pre-judgment and post-judgment interest, court costs expended herein, equitable remedies, punitive damages, and such other relief as this Court deems just and proper in law or in equity or both.

Respectfully Submitted,

Holly Griffith Terrell, *attorney-in-charge*
State Bar No. 24050691
Federal ID No. 1034278
Law Office of Holly Terrell, PLLC
11601 Shadow Creek Parkway
Suite 111-136
Pearland, Texas 77584
281.715.0900
281.377.4413 (facsimile)
*hollyterrelllaw@gmail.com*
***Attorney for Plaintiffs***

*Plaintiffs' Original Complaint*                                                                                          36