**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | |
|---|---|
| **T. F., TED F., LEAH F.,** ***Plaintiffs,*** ***v.*** **GREENWOOD ISD, EDWARD ARIEL ELLIOTT,** ***Defendants.*** | **7:20-CV-215-ADA** |

**ORDER GRANTING MOTION**
**FOR SUMMARY JUDGMENT [ECF No. 35]**

Before the Court is Defendants Greenwood ISD ("GISD") and Edward Ariel Elliott's ("Elliott") (collectively, "Defendants") Motion for Summary Judgment ("the Motion"). ECF No. 35. Plaintiffs T. F., Ted F., Leah F. (collectively, "Plaintiffs") filed a Response. ECF No. 46. Defendants then filed a Reply. ECF No. 50. The Court heard oral argument on the Motion on November 29, 2022. ECF No. 53. At the hearing, the Court granted Defendants' Motion. This opinion memorializes that ruling.

## I. BACKGROUND

On or about January 17, 2019, a student reported for the first time to GISD that a male student had been assaulted by another male student during a bus trip for a middle school basketball game. ECF No. 10 ¶ 42 ("Complaint"). That same evening, GISD Coach Larry Galindo called Plaintiff T.F. to ask about the incident and was told for the first time by T.F. of "sexual assaults" that were committed against T.F. by the same perpetrator (student J.J.) between November 2018 and January 2019, during which several male students on the middle school basketball team held

T.F. down while the main perpetrator (J.J.) pressed his bare anus on T.F.'s face (hereafter referred to as "the incidents").[1]

On January 18, 2019, the next day, the male basketball players were all separately questioned by GISD administrators about the incidents, and the students provided written statements. ECF No. 10 ¶ 45. Seven school employees were present during the questioning of the students: Coach Kendall Thomas, Coach Larry Galindo, Assistant Principal Jennifer Ruiz, Assistant Principal Jayme Tedder, Principal John Paul Huber, GISD Police Chief Mitch Russell, and former Athletic Director Jarod Sanderson; that same day, AP Tedder called Ted F. (T.F.'s father), notified him of the alleged sexual assault, and asked that he and Plaintiff Leah F. (T.F.'s mother) come to the school; GISD administrators met with T.F.'s parents, and GISD administrators notified the police. *Id.* ¶¶ 46–49; ECF No. 35-1, App. 1, T.F. Dep. 61:19–25. GISD suspended the student perpetrators from school, placed them in the disciplinary alternative education program (DAEP), and removed them from the basketball team for the rest of the season. GISD also added a safety plan for greater supervision of athletes on the bus and in locker rooms.[2]

Plaintiffs never notified any GISD employees of the incidents giving rise to their claims prior to January 17, 2019, and they have shown no facts to support that any GISD employee had actual knowledge of the student misconduct before that date. *See, e.g.*, *id.*, T.F. Dep. 48:21–49:14, 50:20–51:9; ECF No. 35-1, App. 4, Leah F. Dep. 47:15–48:14. T.F. admits that no student ever told any GISD employee about the incidents, and no one ever did anything that would have given

[1] Plaintiffs' Complaint refers to the incidents as sexual assaults, but no students were criminally charged with sexual assault; rather, the main student perpetrator was charged with unlawful restraint. ECF No. 10 ¶¶ 74, 78; 7, ¶ 33; 9, ¶ 44; 8-9, ¶¶ 34-35.

[2] ECF No. 35-1 at App. 1, T.F. Dep. 152:2-2-6, 38:13-40:11, 52:4-6 (stating there was additional supervision in locker rooms after January 14, 2019), 148:4-149:14 (requiring teams not playing to sit together, requiring an additional adult on the bus, and directing students to not be in the locker rooms), 187:7-20 (discussing elements of safety plan).

the school the impression that sexual assaults had happened. ECF No. 35-1, App. 1, T.F. Dep. 126:7–19.

Five months later on June 15, 2019, Plaintiffs submitted a formal Title IX complaint; Superintendent Elliott replied to the Title IX complaint on June 18, 2019, stating GISD investigated the matter when it was reported in January 2019 and "turned the matter over to law enforcement." ECF No. 10 ¶¶ 66–67; ECF No. 35-1, App. 2 at 78; ECF No. 35-1, App. 2 at 108, June 18, 2019 Title IX complaint reply letter. The reply letter further stated, "We believe appropriate disciplinary measures have occurred and we continue to monitor the students. If any new concerns arise that violate policy, please report them immediately." ECF No. 35-1, App. 2 at 108, June 18, 2019 Title IX complaint reply letter.

No GISD student was charged with the crime of sexual assault or sexual harassment against T.F. The main perpetrator pleaded to unlawful restraint. *See* ECF No. 35-1, App. 4, Leah F. Dep. 27:14–23. In February 2019, Leah F. filed a report with Child Protective Services (CPS) which conducted an investigation. CPS found that GISD coaches did not observe the incidents and were not guilty of negligent supervision. *Id.* 77:21–25, 76:19–77:21; ECF No. 35-1, App. 3 at 131–45. CPS is the Department of Family Protective Services (DFPS). CPS took no action against any GISD employees. ECF No. 35-1, App. 4, Leah F. Dep. 27:14–23.

On March 27, 2019, Carolyn Thurmond, Assistant District Attorney for Midland County, sent two letters to the Superintendent (one for each of the two alleged perpetrators), indicating that there were no pending charges for alleged sexual assault. ECF No. 35-1, App. 2 at 78; ECF No. 35-1, App. 2 at 105–107. The D.A.'s letter further stated, "Based on the information available at this time, no action [sic] taken against the juvenile by the Midland County District Attorney's Office." *Id.*

In the summer of 2019, T.F. told his father he was not going to play summer league basketball because he did not want to share a locker room with the student perpetrator. ECF No. 35-1, App. 5, Ted F. Dep. 186:5–12. Ted F. called Coach Bridges about T.F. not wanting to sign up, and Coach Bridges asked if T.F. would play if he did not have to be in the same locker room as the perpetrator, and Coach Bridges took the affirmative step to have T.F. and the perpetrator play on different teams, so they were not in the locker room together. *Id.* In August and December 2019, GISD took additional action, upon parents' requests, by changing hotel rooms on a trip for a football playoff game, moving the student perpetrator to a different room. ECF No. 10 ¶¶ 69, 71–73.

In the summer of 2020, Ted F. contacted the new Athletic Director, Rusty Purser, and T.F. told Coach Purser that he did not want to be in the same locker room as the perpetrator; Coach Purser replied that T.F. would be on the varsity football team and the perpetrator would not be, so they would not be in the locker room together. ECF No. 35-1, App. 6, Coach Purser Dep. 42:22–43:9 (Coach Purser met with Plaintiffs at their house in March 2020), 27:8–13 (Coach Purser began working as the new Athletic Director at the end of March/beginning of April 2020); ECF No. 35-1, App. 5, Ted F. Dep. 187:6–17, 187:21–23, 188:18–21. Coach Purser told T.F. he would take steps to make sure the incidents did not happen again, and Coach Bridges also told T.F. that he would do everything he could to protect T.F. ECF No. 35-1, App. 1, T.F. Dep. 31:14–25, 34:4–35:2. T.F. admits that after the matter was reported, no students confronted or harassed T.F, so the discipline regarding making sure T.F. was left alone was successful. *Id.* 33:1–14, 34:4–35:2, 83:5–13.

**Athletic Supply**

Plaintiffs also allege that GISD retaliated against Plaintiffs by discontinuing to do business with Athletic Supply, Inc. (hereinafter "Athletic Supply"), a business that was family-owned until March 2018 when the business was sold to a private equity company. Plaintiffs allege that on or about May 22, 2020, Coach Purser informed Ted F. that GISD was discontinuing purchasing from Athletic Supply. ECF No. 10 at 2, ¶ 5, n. 2; 16, ¶¶ 81, 83. GISD did not cancel any orders with Athletic Supply and continued to pay invoices through at least August 31, 2020. ECF No. 35-1, App. 5, Ted. F. Dep. 92:21–93:19. Coach Purser that in or about March of 2020, Superintendent Elliot came to his office at GISD and told him about documents recently received by GISD that indicated Plaintiffs' intended to file a lawsuit against GISD and to no longer purchase products from Athletic Supply.

In 2020, Ted. F. was not an owner of Athletic Supply; he only owned stock in ASB Sports, a multi-million-dollar company, and Ted F. is not a majority shareholder; he is not even the largest shareholder in his family; ASB Sports owns Athletic Supply, Cardinal Sports Center, Barcelona, and other sporting goods companies; GISD has been buying its sports equipment from Cardinal Sports Center, another affiliate of the same company (ASB Sports), and Plaintiffs' "ownership" is in ASB Sports; Ted F. has not suffered any financial impact after GISD started purchasing from Cardinal instead of Athletic Supply. ECF No. 35-1, App. 5, Ted. F. Dep. 93:20–95:20, 95:17–20, 96:8–15, 98:18–22, 99:11–20, 100:24–101:1. Athletic Supply did not lose money in 2019–2021; Ted F. receives a salary, and his pay has not been based on sales since Athletic Supply was sold in 2018, more than two years before GISD stopped purchasing from Athletic Supply. *Id.* 105:17–106:1, 107:12–25, 173:18–22, 122:3–8.

**II. LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). A material fact will have a reasonable likelihood to affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, the burden of demonstrating a lack of a genuine dispute of material fact lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the fact that the court believes that the non-moving party will be unsuccessful at trial is an insufficient reason to grant summary judgment in favor of the moving party. *See Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). Yet, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

## III. DISCUSSION

GISD moves for summary judgment on all claims raised in Plaintiffs' Complaint. First, GISD asks the Court to grant summary judgment on Plaintiffs' Title IX Claims because GISD was not deliberately indifferent and its response was not clearly unreasonable in light of the known circumstances. Second, GISD asks the Court to grant summary judgment on Plaintiffs' Title IX retaliation claim because there is no evidence Plaintiffs suffered a material adverse action. Third, GISD asks the Court to grant summary judgment on Plaintiffs' equal protection claims under the 14th Amendment. Fourth, GISD asks the Court to grant summary judgment on Plaintiffs' retaliation claims under the 14th Amendment. Finally, GISD asks the Court to grant summary judgment on Plaintiffs' claims under the First Amendment. As explained below, GISD has established that there is no genuine dispute of material fact that all of the above claims should be dismissed and it is entitled to summary judgment as a matter of law.

### A. Plaintiff's First and Fourteenth Amendment Claims

Plaintiffs purport to bring various constitutional claims under the First and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 and 1988. First, Plaintiffs purport to bring procedural due process, substantive due process, and equal protection claims under the Fourteenth Amendment pursuant to 42 U.S.C. sections 1983 and 1988. Second, Plaintiffs purport to bring a retaliation claim under the Equal Protection Clause under the 14th Amendment. Third, Plaintiffs purport to bring claims under the First Amendment pursuant to 42 U.S.C. sections 1983 and 1988 by retaliating against them for advocating on behalf of their rights and based on GISD Representatives' directives to T.F. to refrain from discussing the alleged sexual assaults.

In their Motion for summary judgment, Defendants demonstrate that the above issues should be dismissed because there are no genuine issues of material fact suggesting otherwise. Not once do Plaintiffs respond to, mention, or address their constitutional claims (First and Fourteenth

Amendment, or even 42 U.S.C. § 1983) in their response brief to Defendants' Motion for Summary Judgment. ECF No. 46.

> Plaintiff did not respond in any fashion to [Defendants'] arguments for summary judgment on this claim. Since [Defendants] successfully carried its burden on summary judgment, the burden shifted to Plaintiff to provide specific facts that show a genuine dispute of fact. *Celotex*, 477 U.S at 324; s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Having failed to present the Court with any evidence that [Defendants'] conduct was extreme or outrageous, she failed to meet that burden.

*Ellis v. Carrington Mortg. Services, LLC*, No. 4:19-CV-4370, 2021 WL 3603604, at *4 (S.D. Tex. Aug. 13, 2021). Accordingly, the Court must deny these claims. Indeed, counsel for Plaintiffs represented that they do dispute that summary judgment should be granted denying these claims. This leaves only Plaintiffs' discrimination and retaliation claims under Title IX. As there are no further causes of action against Defendant Elliott, and he cannot be sued under Title IX, the Court finds that he must be dismissed, along with all constitutional claims against GISD.

**B. Plaintiffs' Title IX Claims Against GISD**

1. <u>GISD was not deliberately indifferent, and its response was not clearly unreasonable in light of known circumstances.</u>

Title IX states, "No person . . . shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

> A school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment.

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). "Title IX's language itself narrowly circumscribes the circumstances giving rise to damages liability under the statute. If a recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment. . . ." *Id.* at 630. Plaintiffs must show that GISD's response or lack of response to the harassment was "clearly unreasonable in light of the known circumstances." *Wilson v. Beaumont Indep. Sch. Dist.*, 144 F. Supp. 2d 690, 693 (E.D. Tex. 2001) (quoting *Davis*, 526 U.S at 648).

GISD asserts that it is entitled to summary judgment on Plaintiffs' Title IX claim because Plaintiffs cannot show that GISD had actual knowledge T.F. was assaulted prior to the report on January 17, 2019, and GISD was not deliberately indifferent to the assaults. ECF No. 35 at 7–17.

*First*, as to actual knowledge, Defendants contend that Plaintiffs' Complaint, Plaintiffs' discovery responses, and Plaintiffs' deposition testimony show that GISD and Superintendent Elliott did not have actual knowledge of discrimination prior to January 17, 2019. *Id.* Plaintiffs' Complaint does not even allege that GISD had actual knowledge of the incidents prior to January 17, 2019. *Id.* Rather, Plaintiffs allege that "[b]ased on the sheer number of sexual assaults that took place during the time period at issue as well as the fact that there were multiple victims, Plaintiffs contend that GISD had notice or—at the very least—should have been on notice of the ongoing incidents of sexual assault prior to January 17, 2019." ECF No. 10 ¶ 43. Yet Defendants argue that Plaintiffs must show GISD had actual knowledge of the discrimination, not assert that GISD should have known about alleged discrimination because it allegedly occurred multiple times and involved multiple students. ECF No. 35 at 10. Plaintiffs fail to respond or show any evidence that disputes Defendants' evidence that there was no actual knowledge.

*Second*, as to deliberate indifference, Defendants argue that Plaintiffs have shown no evidence to support deliberate indifference. "Deliberate indifference is an extremely high standard to meet" in and of itself. *Domino v. Tex. Dep't. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "[Deliberate indifference] is a high bar, and neither negligence nor mere unreasonableness is enough." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015). A discrimination claim based on student-on-student harassment requires even higher bar: the "action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633.

Defendants argue that Plaintiffs cannot show that GISD's response or lack of response to the alleged harassment of T.F. was "clearly unreasonable in light of the known circumstances." ECF No. 35 at 12. According to Defendants, the Defendants' investigation began the day they were given notice, and within 24 hours they had interviewed every player on the team, told the parents, and reported it to the police. *Id.* at 12–13. Defendants further contend that the disciplinary actions GISD took against the student perpetrators were not clearly unreasonable. *Id.* Defendants cite *I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839, 840–44 (5th Cir. 2019) as a similar case. *Id.* In that case, the Fifth Circuit held that a school district's response to allegations of classmate's sexual assault was not clearly unreasonable and thus not deliberate indifferent, where a student and her parents complained the school district did not adequately respond to a classmate's sexual assault of the student. The Fifth Circuit stated:

> The school's response to the assault protected I.L. from later sexual harassment and nearly all contact with S.S. Because the deliberate indifference inquiry focuses on the school's response to known harassment, the response must be so deficient as to itself constitute harassment. Based on the success of the measures HISD invoked, however, no reasonable jury could conclude that the school's response was clearly unreasonable.

*I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839, 840–44 (5th Cir. 2019). Defendants argue that the same is true here. Defendants further assert that there was no pattern or previous practice of similar student-on-student harassment. Plaintiffs' only instance involved one student who was allegedly bullied the year before, and Leah F. testified that the situation was different because the child was not held down by a group of people while one child assaulted him and it did not involve sexual assault; she has never heard of similar alleged sexual assaults occurring prior to what happened that basketball year or since.

In response, Plaintiffs argue that GISD's response to T.F.'s harassment did constitute "deliberate indifference" because Defendants' actions and inactions tell a different story. ECF No. 46 at 5. First, Plaintiffs argue that the students were directed by GISD to refrain from speaking of the sexual assaults on multiple occasions. *Id.* Second, Plaintiffs contend that GISD initially refused to contact law enforcement. *Id.* Third, Plaintiffs argue that the police report made by GISD was inaccurate and incomplete; it included no names, no details of the acts reported, characterized the incidents as "hazing", and provided no indication that the incidents were sexual in nature. *Id.* at 5–6. Fourth, Plaintiffs contend that in 2019, T.F.'s football locker was assigned right next to the main perpetrator's locker. *Id.* at 6. Fifth, Plaintiffs argue that GISD failed to ensure that T.F. would not have classes with the main perpetrator and even placed the 2 students in a class together for the fall 2020 semester. *Id.* Sixth, Plaintiffs assert that GISD failed to inform GISD staff of the incidents to keep T.F. safe. *Id.* Seventh, Plaintiffs contend that GISD administrators mischaracterized the sexual assaults as "hazing." *Id.* Plaintiffs further contend that "the fact that a school does something does not insulate it from Title IX liability." *Id.* (citing non-binding Sixth Circuit case law).

As to Defendants' claims of no pattern or practice of allowing bullying or assaults, Plaintiffs contend that this is not the first time GISD has ignored sexual harassment. ECF No. 46

at 8. However, the affidavit that Plaintiffs rely on for this point has been struck by the Court on November 17, 2022, because the Plaintiffs failed to respond to Defendants' motion to strike the affidavit. Thus, Plaintiffs failed to show a genuine dispute of material fact as to Defendants' claims of no pattern or practice.

In reply, Defendants rebut each of the claims that Plaintiffs make in order to support its contention that there is an issue of material fact regarding the deliberate indifference of GISD toward the Plaintiff. ECF No. 50 at 3–7. Defendants again reiterate that "[t]he disciplinary actions GISD took against the student perpetrators were not clearly unreasonable." *Id.* at 4. According to Defendants, none of this or the other actions Defendants took (as described in Defendants' Motion for Summary Judgment) shows indifference. *Id.* at 5. Defendants rebut Plaintiffs' claims that the "police report made by GISD was inadequate and incomplete . . . ." because Plaintiffs are unable to cite to anything in the record that shows what was actually contained in the police report. *Id.* Defendants further rebut the Plaintiffs' response by arguing that the Plaintiffs are unable to cite any case law in the Fifth Circuit that supports its position, but the Defendants are able to support numerous Fifth Circuit cases that support a grant of summary judgment here. *Id.* at 5–7.

The Court finds that Defendants' motion for summary judgment that Plaintiffs' Title IX claim should be denied because there is no genuine dispute of material fact that there was no deliberate indifference by GISD toward the Plaintiff. The Fifth Circuit has held that removing the students from the same class period but leaving them on a sports team together is not indifference under Title IX. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 168 (5th Cir. 2011) ("That the school left them together in their fourth-period cheerleading class is not clearly unreasonable . . . we will not second-guess the school's belief . . . that removing one of them from the squad was itself an unreasonable step in light of the circumstances.") None of this

or the other actions Defendants took shows indifference. Even if the Court were to accept that all of the above facts that Plaintiffs' claims are true, a reasonable jury could not conclude that those support a conclusion that GISD was deliberately indifferent.

Plaintiffs' cases are inapposite. Plaintiffs begin with *Mathis v. Wayne City Board of Education*, 496 Fed. Appx. 513, 515 (6th Cir. 2012), where the perpetrators not only penetrated a student with a marker, but after it was reported to the school, there was further harassment. *Id.* at 515. Here, there was no penetration nor was there any additional harassment alleged after the incident was first reported to GISD. Unlike in the Sixth Circuit case *Mathis*, where there was at most an 11-day suspension, here the perpetrators were placed in DAEP and were kicked out of sports for the rest of the year. Unlike the Sixth Circuit case Plaintiff cites, which found that the suspension was not enough, the Fifth Circuit has held that suspending student perpetrators is a "very strong action." *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015).

In Plaintiffs' second case, *Doe v. Coventry Board of Education*, 630 F.Supp. 2d 226 (D. Conn. 2009), the child faced four years of harassment that was repeatedly reported to the school to no avail, eventually leading to the girl withdrawing from school. *Id.* at 256–258.11 Here, the first report led to an investigation the next day and the matter being reported to the police, stern discipline being meted out, and no claims of harassment thereafter; Plaintiff T.F. not only did not withdraw or transfer, T.F. was still in the National Honor Society and still on the leadership council, and he was not any less of a leader as a result of the incidents; T.F. is still on the football team and is the starting varsity quarterback; and T.F.'s grades are about the same as before. ECF No. 35-1, App. 1, T.F. Dep. 185:12–23, 22:9–13, 123:17–18; App. 5, Ted F. Dep. 135:24–136:2

Plaintiffs cite to *Vance v. Spencer County Public School District*, 231 F.3d 253 (6th Cir. 2000) for the proposition that simply doing something does not insulate a school from Title IX

liability. ECF No. 46 at 7. What it actually says is, "[t]hus, where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior." *Vance*, 231 F.3d at 261. Here, the school district has no knowledge their remediation was unsuccessful, mostly because it was, according to T.F., 100% successful. ECF No. 35-1, App. 1, T.F. Dep. 26:5–8; *see also*, ECF No. 10. As the Fifth Circuit has echoed from the Supreme Court: "Title IX does not require flawless investigations or perfect solutions." *Sanches*, 647 F.3d at 170 (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 129 S. Ct. 788, 172 L.Ed.2d 582 (2009)). Plaintiffs cite several other cases to bolster their arguments, but none of them have any precedent in the Fifth Circuit, as they are from courts out of Kansas and California. It has been four school years since T.F. was harassed/assaulted by the perpetrators, and there has been no harassment, assaults, or retaliation by any of the students, yet Plaintiff claim, "but there could be." This Court cannot award Plaintiffs relief based on not-yet-ripe, hypothetical incidents which may one day happen to some unnamed individual(s). Plaintiff T.F. has played football and had classes together and walked the halls together with his former perpetrators for nearly four years since the report with no issues, per T.F. *See generally*, ECF No. 35-1, App. 1, T.F. Dep. 26:5–8; *see also*, ECF No. 10.

Because Plaintiffs have failed to show a genuine issue material fact as to both actual knowledge and to deliberate indifference, Defendants' motion for summary judgment on Plaintiffs' first Title IX claim is GRANTED.

2. <u>There is no evidence that Plaintiffs suffered an adverse action in support of its Title IX retaliation claim.</u>

The second issue is whether GISD should be granted summary judgment on Plaintiffs' Title IX retaliation claim because there is no evidence Plaintiffs suffered an adverse action. Plaintiffs claim GISD retaliated against them by not doing business with "Athletic Supply, a

closely held corporation of which Ted F. owns a percentage." ECF No. 10 ¶ 5; *see also id.* ¶¶ 81, 83–85, 87–94, 123, 150.

To establish a prima facie case of unlawful retaliation under Title IX, a Plaintiffs must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse action. *Collins v. Jackson Pub. Sch. Dist.*, 609 Fed. App'x. 792, 795 (5th Cir. 2015) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)).

Defendants contend that under the second prong, GISD's decision to do business with a company other than Athletic Supply does not constitute a material adverse action. ECF No. 35 at 18. GISD did not have a contract with Athletic Supply. ECF No. 35-1, App. 4, Leah F. Dep. 121:2–8. GISD did not cancel any orders with Athletic Supply and paid Athletic Supply more than $50,000 for invoices through August 31, 2020; the company was sold to ASB Sports in March 2018, so at the time GISD notified Ted F that GISD would discontinue purchasing from Athletic Supply, Ted. F. was no longer an owner; he only owned stock in ASB Sports; ASB Sports is a multi-million-dollar company, and Ted F. is not a majority shareholder or the largest shareholder in his family; ASB Sports owns Athletic Supply, Inc., Cardinal Sports Center, Barcelona, and other sporting goods companies; GISD has been buying its sports equipment from Cardinal Sports Center, another affiliate of the same company (ASB Sports), and Plaintiffs' ownership is in ASB Sports. ECF No. 35-1, App. 5, Ted. F. Dep. 92:21–95:20, 112:23–113:2, 96:8–15, 98:18–22, 99:11–20.Ted F. admitted that: he has not suffered any financial impact after GISD started purchasing from Cardinal Sports Center instead of Athletic Supply; Athletic Supply did not lose money in 2019, 2020, or 2021; Ted F. receives a salary, and his pay has not been based on sales since March 2018 when Athletic Supply was sold to ASB Sports, more than two years before

GISD stopped purchasing from Athletic Supply and well before Plaintiffs filed suit; that he could not provide any economic loss he suffered as a result of anything GISD or the Superintendent did; after GISD stopped purchasing from Athletic Supply the business made significantly more money. ECF No. 35-1, App. 5, Ted F. Dep. 100:24–101:1, 105:17–106:1, 107:12–25, 173:18–22, 122:3–8, 115:4–116:18, 122:14–24. After the date Plaintiffs allege GISD stopped purchasing from Athletic Supply, sales for the company actually increased and there was no negative impact; he never received any form of employment discipline, and his salary was not reduced. *See id.*

Plaintiffs respond that Plaintiff Ted F. is the general manager of Athletic Supply, a vendor of athletic equipment. ECF No. 46 at 11. Plaintiff asserts that Rusty Purser, the athletic director and head football coach for GISD, testified that in or about March 2020, Superintendent Ariel Elliot came to his office at GISD and told him about documents recently received by GISD that indicated plaintiffs' intended to file a lawsuit against GISD and to no longer purchase products from Athletic Supply. *Id.* at 11–12. Purser further testified that, within a day or two after this discussion with Superintendent Elliot, he initiated a meeting with Plaintiffs in March 2020 during which he told Plaintiffs that GISD would no longer purchase from Athletic Supply; he also communicated this to Athletic Supply's sales department. Purser testified that, during a meeting in or about July 2020, he communicated to all GISD head coaches that they were not to purchase athletic equipment from Athletic Supply. *Id.* at 12. In addition, Purser testified that, prior to his conversation with Superintendent Elliott, he had no intention of discontinuing business with Athletic Supply, and that GISD placed no orders with Athletic Supply after his conversation with Plaintiffs in or about in March 2020. *Id.* Purser further testified that he was concerned that continuing to make purchases from Athletic Supply would negatively impact his employment with GISD. *Id.* And Ted. F. testified in his deposition that, during this March 2020 meeting, Purser

stated that he interpreted Superintendent Elliot's direction regarding discontinuing business with Athletic Supply to mean that he would lose his job if he continued to purchase from Athletic Supply. *Id.* at 12–13. Plaintiffs further responds that Plaintiff Ted F. testified at deposition about the conversations he had to have with family members who had interests in Athletic Supply, Athletic Supply employees, the Athletic Supply sales managers, and the CFO of the company about how and why he lost the business of GISD. *Id.* at 13.

Critically, Plaintiffs fails to rebut or show any issue of material fact that Plaintiffs suffered an adverse employment action because of GISD's decision to stop purchasing from Athletic supply. In 2020, Plaintiffs were not an owner of Athletic Supply: they only owned stock in ASB Sports, a multi-million-dollar company that owns Athletic Supply along with other sporting goods stores including Cardinal. Plaintiffs have not suffered any financial impact after GISD started purchasing from Cardinal instead of Athletic Supply. Ted F. receives a salary, and his pay has not been based on sales since Athletic Supply was sold in 2018, more than two years before GISD stopped purchasing from Athletic Supply. Plaintiffs have no economic loss, nor did Plaintiffs produce any evidence of damages or facts that create a genuine issue of material fact.

Moreover, Plaintiffs have made no actual claim for damages, presenting no injuries other than the losses to non-party Athletic Supply. The U.S. Supreme Court recently held that "There is thus no basis in contract law to maintain that emotional distress damages that under Title IX there is "no ground, under our cases, to conclude that federal funding recipients have 'clear notice,' that they would face such a remedy in private actions brought to enforce the statutes at issue." *Cummings v. Premier Rehab Keller, P.L.L.C.*, __ U.S. __, 142 S. Ct. 1562, 1576 (2022) (citations omitted). Thus, Plaintiffs cannot claim emotional damages under Title IX.

Because Plaintiffs have failed to show a genuine issue material fact that Plaintiffs suffered an adverse employment action or suffered any recognized damages, Defendants' motion for summary judgment on Plaintiff's Title IX retaliation claim is GRANTED.

## IV. CONCLUSION

Defendants have presented sufficient evidence that no genuine dispute of material fact exists on either of Plaintiffs' Title IX claims. Plaintiffs then failed to demonstrate a genuinely disputed material fact, or indeed any facts at all, showing Plaintiffs' various constitutional claims under the First and Fourteenth Amendments. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 35) is **GRANTED**.

SIGNED this 5th day of December, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE